ORDERED in the Southern District of Florida on February 1, 2007



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Case No. 06-10563-BKC-JKO |
| FLORIDA COASTAL AIRLINES, INC., | Chapter 11 |
| Debtor. | |

**ORDER DENYING DEBTOR'S EMERGENCY MOTION TO INVOKE EXCLUSIVITY, SETTING HEARING ON ALLIANCE AIR GROUP'S DISCLOSURE STATEMENT, AND SETTING SCHEDULE AND PROCEDURES ON COMPETING PLANS**

This small business chapter 11 case for a commuter airline came before me for hearing on January 29 and 31, 2007. The hearing was originally set on January 29th to consider the Debtor's amended disclosure statement. On the morning of the hearing, the Debtor filed its Emergency Motion to Invoke [sic] Exclusivity. Meanwhile, also on January 31st, a competing plan was filed by Alliance Air Group, LLC ("Alliance"), an entity which had been in negotiations with the Debtor to acquire an interest in a reorganized Debtor. Those negotiations aborted, and the Debtor and Alliance have now presented a series of issues which appear to be questions of first impression dealing with small business

chapter 11 cases under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

## Background

The Debtor filed its voluntary chapter 11 petition on March 20, 2006. The Debtor had previously operated as a commuter airline operating between Florida and the Bahamas under regulatory authority issued by the Federal Aviation Administration ("FAA") under 14 CFR Part 135, by the United States Department of Transportation ("DOT") under 49 U.S.C. § 41738, and by the Bahamian Department of Civil Aviation. Prepetition, the Debtor had operated using nine passenger Cessna 402 aircraft. It has conducted no flight operations since the filing of its petition.

In June 2006, the Debtor's principal shareholder, Dean Forest, sold controlling interest in the Debtor to Albert Kelly, III ("Kelly"), who was also the controlling shareholder of another commuter airline, Lynx Air International, Inc. ("Lynx"). Kelly voted his shares to elect himself and C.A. Southerland ("Southerland") as the sole directors of the Debtor; they in turn elected Southerland as the Debtor's CEO. Southerland simultaneously serves as managing director of Lynx. The Debtor has had no officers or directors other than Kelly and Southerland since June 2006, and the Debtor has been entirely under their control since then. As such, Kelly and Southerland owe fiduciary duties to the Debtor and, because the Debtor is clearly insolvent, to the Debtor's creditors.[1]

---

[1] Under applicable Florida corporate law, a director must perform his or her corporate duties (1) in good faith; (2) with such care as an ordinary prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation. *Fla. Stat.* § 607.0830(1). Florida law has long recognized that corporate officers and directors owe duties of loyalty and a duty of care to the corporation. *See Cohen v. Hattaway*, 595 So. 2d 105 (Fla. 5th Dist. Ct. App. 1992); *B&J Holding Corp. v. Weiss*, 353 So. 2d 141 (Fla. 3rd Dist. Ct. App. 1978). An officer's or director's fiduciary duties are extended to the creditors of a corporation when the corporation becomes insolvent or is in the "vicinity of insolvency". *See Toy King Distributors, Inc.*, 256 B.R. 1 (Bankr. M.D. Fla. 2000).

Insofar as I have been able to determine, the Debtor has not had any of the FAA's required "three wise men" – a chief pilot, a director of maintenance, and a director of operations – in place since at least the time of Lynx's acquisition of control. The sole assets of any value owned by the Debtor are its regulatory operating authorities, which cannot be transferred separately from the Debtor itself.

On September 8, 2007, the FAA wrote to the Debtor and advised that "if no aircraft or required personnel [presumably the three wise men] are in place within 30 days from this date" the Debtor was requested to surrender its operating certificate to the FAA's Fort Lauderdale flight standards office. Thereafter, on October 17, 2006, DOT wrote to the Debtor and advised that in the absence of flight operations and airworthy aircraft available for operations, the Debtor had been suspended from operations and prohibited from recommencing operations until its fitness to do so was reestablished by DOT.

The Debtor's management and its aviation regulatory advisor, Richard A. Asper,[2] met with FAA officials in early December 2006 and again in early January 2007. Asper testified that it is his understanding that the Debtor is at risk for the imminent revocation of its FAA and DOT operating authority unless it promptly makes progress (1) in acquiring, or at least identifying, specific aircraft which it proposes to operate, and (2) employing the requisite three wise men. Southerland testified that Lynx has prepared operating manuals for a Saab 340 aircraft owned by Kelly, and proposes to tender to the Debtor either that Saab 340 or a Cessna 402 of a type previously operated by the Debtor. Southerland also testified that Lynx is prepared to provide all necessary infrastructure for the operation of the Debtor, including providing the three wise men.

---

[2] The Debtor has not sought to retain Asper, who testified that he is retained by Lynx, by Kelly, or by both.

It is not clear to me why Kelly and Southerland did not tender aircraft and provide the necessary infrastructure, including the wise men, back in September and October when FAA and DOT first raised regulatory issues.[3] Regardless, it is clear that serious regulatory issues now exist. The Debtor's directors have within their power the ability to cure the problems, or at least to take sufficient steps in that direction to give good reason to FAA and DOT to hold off on the formal commencement of revocation proceedings. Southerland testified that he and Kelly were waiting for some indication of "support of the Court in some fashion" for the Debtor's reorganization efforts before taking the necessary steps to tender aircraft and infrastructure, and that they "need a comfort level" in order to take the next steps.

As a Westlaw or Lexis search will reveal, I was involved in a number of airline reorganizations as a practicing lawyer. Like most bankruptcy judges, I am highly reorganization minded and will endeavor to confirm chapter 11 plans whenever the requirements of the Bankruptcy Code are met. I would like nothing better than to have this case become successful. Having said that, I can only act on the facts and law that are before me. I am duty bound, and will, honestly apply the facts presented to the law as I can best understand it. I cannot predict that I will confirm the Debtor's reorganization plan because I cannot prejudge whether the requirements for confirmation under § 1129 will have been satisfied when we get to the confirmation hearing. The odds of my confirming the Debtor's plan are, of course, enormously greater if Southerland and Kelly take the steps which Southerland and Asper testified on January 31st are necessary if the FAA and DOT regulatory authorities are to be preserved. And in that regard, the ball is in Southerland's and Kelly's court.

---

[3] It is also not clear to me why Southerland, an experienced commuter airline operator, and his consultant Asper did not anticipate these regulatory issues beginning as early as Kelly's acquisition of control of the Debtor, and his installation of Southerland as CEO, in June 2006.

The Debtor brought none of these regulatory matters to my attention or to the attention of its creditors or the Office of the United States Trustee prior to the filing of the Emergency Motion to Invoke Exclusivity on January 29th. The Debtor's Amended Disclosure Statement, filed January 23rd, gives no hint that the Debtor's regulatory authorities are in imminent danger of revocation by FAA, DOT, or both.

On October 6, 2006, the Debtor filed a reorganization plan and disclosure statement. The disclosure statement elicited several objections (as well as untimely objections to confirmation of the Debtor's plan from the Internal Revenue Service). The Debtor filed an amended plan and disclosure statement on January 23, 2007, which was considered at the hearing on January 29th. In the absence of objections to the amended disclosure statement, I indicated at that time that I would approve it and will do so by separate order.

Meanwhile, the Debtor's and Lynx's negotiations with Alliance aborted. At the hearing on January 29th, Alliance advised me that it intended to purchase a claim against the Debtor so as to become a party in interest able to file a competing reorganization plan. Alliance subsequently bought a claim and, on January 31st, filed its competing plan and disclosure statement. The Debtor strenuously objects to Alliance's right to file a competing plan; in response, Alliance suggests that the Debtor's plan is itself unconfirmable[4]. I took the matter under advisement after an evidentiary hearing and extensive argument on January 31st.

### Exigent circumstances

The Debtor argued at the hearing that delays in the confirmation process have put its licenses at risk. Alliance argued that any crisis in regulatory issues was of the Debtor's own making.

---

[4] I will not consider confirmation issues at this stage of the case.

Regardless, I take the threat to the Debtor's regulatory authorities as serious. I have accordingly treated the matters raised in the Motion to Invoke Exclusivity as emergency in nature and will, with some trepidation, issue this order the day after the emergency hearing.

### Exclusivity under § 1121(e)

As noted above, the Debtor's case is a "small business case," newly-defined by BAPCPA under 11 U.S.C. § 101(51D) as a chapter 11 case in which the debtor is a "small business debtor," in turn defined in § 101(51C) in relevant part as follows:

> (51C) The term "small business debtor" –
> (A) ... means a person engaged in commercial or business activities ... that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the petition or the date of the order for relief in an amount not more than $2,000,000 (excluding debts owed to 1 or more affiliates or insiders) for a case in which the United States trustee has not appointed under section 1102(a)(1) a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor....

The United States Trustee gave notice on April 21, 2006, that it would not appoint a creditors' committee pending further notice.[5] No further notice on the subject has been given. Both the Debtor and Alliance agree that this is a small business case.

Section 1121(e) as adopted by BAPCPA reads as follows:

> (e) In a small business case –
> (1) only the debtor may file a plan until after 180 days after the date for the order for relief, unless that period is –
> (A) extended as provided by this subsection, after notice and a hearing; or
> (B) the court, for cause, orders otherwise;
> (2) the plan and disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

---

[5] Thus happily sparing me from having to decide, with no statutory guidance, whether such a committee had been "sufficiently active and representative."

 (3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if –
  (A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;
  (B) a new deadline is imposed at the time the extension is granted; and
  (C) the order extending time is signed before the existing deadline has expired.

The Debtor's original plan and disclosure statement was filed October 6, 2006, 200 days after the petition date. By that time, the Debtor's automatic exclusivity under § 1121(e)(1) had expired, and the field was open for other parties in interest to file competing plans. No one did so, then. The Debtor's amended plan, filed January 23, 2007, was filed 309 days after the petition was filed. And the Alliance plan, filed January 31, 2007, was filed 317 days after the petition was filed.

 The Debtor's amended plan is fundamentally a cleaned-up version of its original plan. As such, I find that the amended plan relates back to the date of the original plan, October 6, 2006, before the expiration of the 300-day deadline for the filing of plans contained in § 1121(e)(2). I do so by analogizing to the relation back of amended pleadings under Fed.R.Bankr.P. 7015, which applies Fed.R.Civ.P. 15 to adversary proceedings. Under Rule 7015, "[w]hether the Court has jurisdiction to entertain the amended complaint depends upon whether the amended complaint relates back to the date of filing the original complaint." *Farmer v. Osburn (In Re Osburn)*, 203 B.R. 811, 813 (Bankr. S.D. Ga. 1996). In *Osburn*, the court allowed relation back to an otherwise untimely filed complaint finding that the complaint and the amended complaint arose out of the same factual occurrence. I view the 300 day deadline imposed by § 1121(e)(2) as akin to a statute of limitations and view an amended plan in the same analytical framework as an amended complaint filed after the expiration of a statute of limitations: If the amendment can properly be said to relate back, then it should be allowed. I fully

appreciate that Rule 7015 has not been made applicable to contested matters under Rule 9014, such as the disputed confirmation proceedings here, but it would be peculiar indeed if the ability to amend a reorganization plan to deal with changed circumstances had been prohibited by Congress. I accordingly rely upon 11 U.S.C. § 105(a) as providing sufficient authority for me to find that the Debtor's amended plan relates back so as to be deemed timely filed under § 1121(e)(2).

The Alliance plan presents different issues. The Debtor contends that § 1121(e)(2) prohibits the filing of **any** reorganization plan (and disclosure statement) more than 300 days after the petition date. This is one possible reading of the statute, and is a reading which some commentators have suggested. For example, Collier suggests that if neither the debtor nor any other party files a plan within 300 days of the petition date, then no plan can be filed, no relief is available in chapter 11, and the case should be converted or dismissed. *See* 7 Collier on Bankruptcy ¶ 1121.07[4] (15th ed. 2006). Collier cites no authority other than the statutory language for this interpretation.

Alliance suggests, and I conclude, that § 1121(e) should be read differently. Section 1121(e)(1) says that "only the debtor may file *a* plan until after 180 days after the date of the order for relief" unless steps are taken which did not occur here. Then, § 1121(e)(2) says that "*the* plan and a disclosure statement (if any) shall be filed not later than 300 days after the date for the order for relief." The use of the definite article "the" is critical here. Congress did not say in § 1121(e)(2) that "a" plan, or "any" plan, or "all" plans must be filed within 300 days. It said that "the" plan must be so filed. The use of the definite article "the" relates back to its antecedent reference in § 1121(e)(1), namely, to "a plan" filed by the debtor. Note that former § 1121(e)(2) which existing pre-BAPCPA specified that "*all* plans shall be filed within 160 days after the order for relief." If Congress intended new § 1121(e)(2) to apply to all plans, it certainly knew how to say so. Changing the words in § 1121(e)(2) from pre-BAPCPA

"all plans" to BAPCPA's "the plan" evinces a Congressional intent to restrict the application of the new 300-day deadline for the filing of reorganization plans solely to those plans filed by debtors.

This interpretation is strongly reinforced by the provisions of § 1121(e)(3) relating to the extension of time frames in §§ 1121(e)(1) and (e)(2). These deadlines "may be extended only if –

(A) *the debtor*, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;
(B) a new deadline is imposed at the time the extension is granted; and
(C) the order extending time is signed[6] before the existing deadline has expired.

If § 1121(e) applied to plans other than those filed by the debtor, the provisions of § 1121(e)(3)(A) become absurd. By its terms, § 1121(e)(3) allows for the extension of deadlines imposed in §§ 1121(e)(1) and (e)(2) only where *the debtor* demonstrates that a plan is likely to be confirmed within a reasonable time period. If § 1121(e) applied to creditor plans, then the creditor's seeking of an extension of a deadline is captive to the debtor's willingness to demonstrate that the creditor's plan is likely to be timely confirmed. It is wholly unreasonable to believe that Congress intended to put creditor plans at the mercy of a debtor's willingness to demonstrate that confirmation is probable.

The change in language in § 1121(e)(3) made by BAPCPA reinforces this view. Under former § 1121(e)(3), "on request of *a party in interest*" made within the deadlines, the court was authorized to reduce or increase the deadlines for the filing of plans. The reworded § 1121(e)(3) in BAPCPA doesn't say who can ask, but as noted above, does authorize the debtor *but no one else* to demonstrate that a deadline extension will be followed by the timely confirmation of a plan.

---

[6] I am familiar with no other provision of bankruptcy law in which the outcome is controlled by when the court **signed** an order, rather than when such an order was entered.

I therefore conclude, based upon the statutory language used in § 1121(e), that the 300-day deadline for the filing of reorganization plans in small business chapter 11 cases applies only to plans filed by the debtor and that there is no statutory deadline for the filing of such a reorganization plan by any party in interest other than the debtor. Accordingly, I conclude that the Alliance plan filed 317 days after the date of the order for relief was timely filed. The Debtor's Emergency Motion to Invoke Exclusivity is therefore DENIED.

### Scheduling order

In light of the exigencies of this case, for cause shown, and pursuant to Fed.R.Bankr.P. 9006(c), the periods for notice of the hearings on Alliances' disclosure statement and on confirmation of the competing plans as provided in Fed.R.Bankr.P. 2002 are hereby shortened, as follows:

1. I will conduct a hearing on the following matters on **Wednesday, February 14, 2007, at 1:30 p.m.**:

    a. The Alliance disclosure statement. Any objections to the disclosure statement shall be filed and served so as to be received on or before February 12, 2007.

    b. Any motion seeking approval of solicitation materials for the Debtor's plan or the Alliance plan, provided that such motion is filed and served so as to be received on or before February 9, 2007. No solicitation materials may be circulated to any party in interest unless such materials are approved at this hearing.

    c. Any motion seeking approval of a form of ballot for voting on the competing plans, provided that such motion is filed and served so as to be received on or before February 9, 2007. No ballot may be circulated to any party in interest unless its form is approved at this

hearing. Counsel for the Debtor and counsel for Alliance are hereby instructed to confer and, if possible, submit a joint motion seeking approval of a form of ballot.

2.  **Service of Solicitation Package**. On or before **February 19, 2007,** the Debtor and Alliance shall jointly serve a copy of the plans, the disclosure statements and the approved form of ballot and solicitation materials on all creditors, equity security holders, the U.S. Trustee and all other parties in interest.

3.  **Confirmation Hearing**. I will conduct a hearing on confirmation of the Debtor's plan and the Alliance plan on **March 5, 2007, at 1:30 p.m.** The Confirmation Hearing may be adjourned from time to time by announcement made in open court without further notice. If a plan is not confirmed, I will also consider dismissal or conversion of the case.

4.  **Date for Acceptance or Rejection of the Plan.** **March 1, 2007** is fixed as the last day for filing written acceptances or rejections of the Plan.

5.  **Objections to Confirmation.** Any written objections to confirmation of the Plan shall be filed with the Court and served so as to be received no later than **March 1, 2007**.

6.  **Plan Proponent's Report and Confirmation Affidavit**. Each plan proponent shall file and serve so as to be received on of before **March 2, 2007** on the U.S. Trustee, the Local Form "Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees" and the Local Form "Confirmation Affidavit". The individual executing the "Confirmation Affidavit" shall be present at the confirmation hearing.

7.  **Administrative Claims Bar Date**. All creditors and parties in interest that assert a claim against the Debtor which arose after the filing of this case, including all professionals seeking compensation from the estate of the Debtor pursuant to 11 U.S.C. §330, must file motions or

applications for the allowance of such claims with the Court no later than **March 1, 2007**, and a copy shall be served on the debtor, the trustee, any committee and the U.S. Trustee. Any motions or applications filed may be heard at the Confirmation Hearing if properly scheduled and noticed by the applicant. Any motion or application not heard at the Confirmation Hearing will be scheduled for hearing in the normal course.

8. **<u>Consequences for failure to comply</u>**. If a plan proponent does not timely comply with any of the requirements of this order, I may impose sanctions at the Confirmation Hearing without further notice including dismissal, conversion of the case to chapter 7, or the striking of the plan. The Court will also consider dismissal or conversion at the Confirmation Hearing at the request of any party or on the Court's own motion.

It is SO ORDERED.

###

Copies provided to:

Susan D. Lasky, Esquire
Paul S. Singerman, Esquire
Office of the United States Trustee